**E-FILED on**   1/3/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MITCHELL J. PEARCE, D.C., M.S., L.Ac.,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROL ROMEO, et al.<br><br>        Defendants. | No. C-02-04011 RMW<br><br>ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS<br><br>**[Re Docket No. 163]** |

Plaintiff Mitchell Pearce ("Pearce") has sued numerous individuals who were involved in some capacity in proceedings against him before the California Board of Chiropractic Examiners and the Acupuncture Board. The current motion to dismiss is brought by twelve past and present Chiropractic Board members[1], six prosecutors from the California Attorney General's office[2], two

---

[1] The individuals are R. Lloyd Friesen, Michael Martello, Lloyd E. Boland, Deborah E. Pate, John Bovee, Sharon Ufberg, Jeffrey Steinhardt, Stephen Foreman, Jacalyn Buettner, Craig Missakian, and John Deronde.

[2] These individuals are Carol Romeo, Wilbur Bennett, Vivien Hersh, Lydia Zane, Joel Primes, and Lawrence Mercer.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH

Department of Consumer Affairs investigators[3], two expert witnesses[4], two members of the public who brought claims against Pearce,[5] and the former Executive Director of the Chiropractic Board (collectively "the state defendants").[6]  The court has considered the parties' papers and heard their arguments.  For the reasons set forth below, the court grants the state defendants' motion.

## I.   BACKGROUND

The court has summarized Pearce's allegations in previous orders and repeats them below only as necessary.  Essentially, Pearce asserts that the proceedings against him before the Chiropractic and Acupuncture Boards stemmed from a vast conspiracy and involved racketeering activities.  The alleged conspirators and racketeers were individual members of the Board of Chiropractic Examiners, the Executive Director of the Board of Chiropractic Examiners, the attorney advisor for Board of Chiropractic Examiners, the prosecutor for the Attorney General's Office assigned to represent the Board of Chiropractic Examiners, an investigator for the Department of Consumer Affairs, a deputy Attorney General assigned to prosecute cases before the Acupuncture Board, various chiropractors, the witnesses involved in the proceedings before the boards, and a number of attorneys who rendered legal services to witnesses or who allegedly played some part in the proceedings of the two boards.

## II.   ANALYSIS

### A.   Motion to Dismiss

Dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  Although the court questions whether many of the allegations have evidentiary support, the court accepts the facts alleged in the complaint, as opposed to the legal conclusions, as true.  *Id*.

---

[3]   These individuals are James Sharp and Robert Bourke.

[4]   These individuals are C. Brett Sullivan and Peter Berman.

[5]   These individuals are Gaylyn Machado and Patricia Brickman.

[6]   This individual is M. Elizabeth Ware.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH

"A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev.Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### A. First Claim Against Romeo for Fabricating Evidence

Pearce first claims that deputy attorney general Romeo violated his due process rights under 42 U.S.C. § 1983 ("section 1983") by fabricating evidence and making false statements during the hearings. FAC ¶¶ 123-128. Pearce alleges that he "was unable to discover the fact that Romeo had fabricated evidence until April 2001." *Id*. at ¶ 127. However, the statute of limitations for claims under section 1983 at that time was one year. *See, e.g., Embury v. King*, 191 F. Supp. 2d 1071, 1079-80 (N.D. Cal. 2001) (noting that federal courts must apply "the forum State's general tort statute of limitations to claims brought under section 1983" and "[i]n California, the appropriate statute of limitations is one year"). Pearce filed this complaint on August 19, 2002, more than one year after April 2001.[7] The statute of limitations thus bars Pearce's first cause of action.[8]

### B. Second, Third, Fourth and Fifth Claims Against Romeo, Sharp, and Unknown Peace Officer for Searching Pearce

The Chiropractic Board conducted a hearing on whether to terminate Pearce's license in September 1995. FAC ¶ 64. Pearce claims that Romeo ordered Sharp and an unidentified police officer to search him as he entered the hearing room. *Id*. Pearce claims that this conduct (1) violated his Fourth Amendment rights under section 1983, (2) constituted an assault and battery, and (3) violated California Civil Code sections 52.1, 51.7, and 52. *Id*. at ¶¶ 130-145.

Pearce contends that because he discovered that Romeo did not have a warrant or other

---

[7] California Code of Civil Procedure § 340(3) provided a one-year statute of limitations for personal injury actions until its amendment effective January 1, 2003.

[8] Pearce contends that "[t]his court has found that [the section] 1983 causes of action . . . in this complaint did not accrue until September [ ]1, 2001." FAC ¶ 212. The court disagrees. In fact, the court held only that Pearce's *malicious prosecution* causes of action did not accrue until he "secure[d] a successful termination of the prior proceeding." May 4, 2004 Order Granting Alexander's Motion to Dismiss at 2:2-9. The court also noted that Pearce's conspiracy claim "arguably . . . appear[ed] timely" if construed as alleging a conspiracy to cause adverse action by the Chiropractic Board. *See id*. at 7:7-11.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH

authorization to search him "on January 28, 200[2]," his claims are timely. *Id.* at ¶ 132.[9] However, it is well-settled that the statute of limitations for a section 1983 claim stemming from a warrantless search begins to run on the date of the search, not on the date the plaintiff learns that the search was constitutionally deficient. *See, e.g., Triestman v. Probst*, 897 F. Supp. 48, 50 (N.D. N.Y. 1995) ("[p]laintiff should have been aware when . . . the search [was] executed . . . that there was a possible violation of his rights"). Because the search at issue occurred nearly a decade ago, the statute of limitations bars Pearce's section 1983 and assault and battery claims. Moreover, violations of California Civil Code sections 52.1, 51.7, and 52 that are roughly "analogous to a federal claim for personal injury under [section] 1983 . . . [are] also subject to the one-year statute." *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (2002). Pearce's claims under these statutes are therefore also untimely.

  **C. Seventh Claim Against the Chiropractic Board Members, Sharp and Sullivan for Fabricating Evidence**

Pearce contends that the Chiropractic Board Members and Sharp induced Sullivan to write a report to help them prosecute Pearce, thus violating his due process rights under section 1983. FAC ¶¶ 50, 160. Pearce alleges that (1) Sullivan wrote the report on March 29, 1992, (2) the Chiropractic Board members falsified it and prevented Pearce "from obtaining a copy of Sullivan's original, unexpurgated report," and (3) Pearce "was not able to obtain a copy of the unexpurgated report until four years later." *Id.* at ¶¶ 51-53. Thus, according to Pearce's own allegations, he was aware that someone had changed Sullivan's report in early 1996. Accordingly, Pearce's section 1983 claim is time-barred.

  **D. Eighth Claim Against Sullivan and Fourteenth Claim Against Brickman for Malicious Prosecution**

Pearce alleges that Sullivan wrote a report and "joined in the instigation and continuation of prosecution of Dr. Pearce without probable cause . . . in order to promote his political view" that chiropractors could not properly perform rectal examinations. *Id*. at ¶¶ 164-167. According to

---

  [9] Pearce's complaint sometimes refers to this date as "January 28, 2001" and sometimes refers to it as "January 28, 2002." *Compare* FAC ¶¶ 132 *and* 137 *with id*. at ¶ 118. The court assumes that Pearce intended to allege that he made his discovery in 2002.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH
4

1  Pearce, Brickman helped initiate the proceedings against Pearce by falsely claiming that he "had
2  conducted a breast examination and placed a finger in her anus for no apparent reason." *Id*. at ¶¶ 68,
3  189-191.  Pearce contends that Sullivan and Brickman were guilty of malicious prosecution.  This
4  argument lacks merit.  "[P]robable cause to bring an action does not depend upon it being
5  meritorious, as such, but upon it being *arguably tenable*, *i.e.*, not so completely lacking in apparent
6  merit that no reasonable attorney would have thought the claim tenable." *Wilson v. Parker, Covert*
7  *& Chidester*, 28 Cal. 4th 811, 824 (2002) (emphasis in original).  According to Pearce's own
8  pleadings, the hearings that Sullivan and Brickman allegedly "instigat[ed]" led the Chiropractic
9  Board to revoke Pearce's license in November 1996.  FAC ¶ 78.  Although the Superior Court later
10 overruled the Chiropractic Board's decision, the fact that Sullivan and Brickman allegedly helped
11 bring a claim that initially prevailed proves that the claim was "arguably tenable." *See Wilson*, 28
12 Cal. 4th at 819 ("a trial victory by the underlying plaintiff shows that the suit was not among the
13 least meritorious of meritless suits") (quotation marks omitted).  Moreover, as this court has
14 previously held, "since it was the Chiropractic Board that ultimately determined whether [to file]
15 charges" against Pearce, no one [else] can be liable "under a theory that [they] 'instigated' the
16 disciplinary proceedings."  April 19, 2005 Order Granting Scheffer's Motion to Dismiss at 3:15-17.

17  **E.  Ninth, Thirteenth, and Seventeenth Claims Against Sharp for Fabricating Evidence**, **Twelfth Claim Against Sharp for Conspiracy**, **and Twentieth Claim**
18  **Against Unknown Agent for Fabricating Evidence**

19  Pearce asserts that Sharp induced a witness, Lynde Scheffer, "to change her story" for use
20 against Pearce in the proceedings before the Chiropractic Board.  FAC ¶¶ 66-67.  In addition,
21 according to Pearce, Sharp and an unknown deputy attorney general induced Morrow to fabricate
22 evidence that Pearce had subjected her to a breast examination.  *Id*. at ¶¶ 69, 80 201, 219.  Sharp
23 allegedly incorporated Scheffer and Morrow's fabrications into a report he presented to the Board.
24 *Id*. at ¶ 168.  Pearce claims that Sharp also "falsely testified to the validity of Scheffer's perjury" and
25 destroyed his investigative file and notes to cover his wrongdoing.  *Id*.  Pearce claims that Sharp and
26 the unknown deputy attorney general"s conduct violated his due process rights under section 1983.
27 *Id*. at ¶ 169.
28  Pearce also contends that Sharp and Scheffer's illicit agreement violated 42 U.S.C. § 1985

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH
5

1  ("section 1985"), which prohibits conspiring to deprive a person of their civil rights. *Id*. at ¶¶ 180-
2  183. As with section 1983, section 1985 contains a one-year statute of limitations. *See Taylor v.*
3  *Regents of University of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) ("California's one-year statute of
4  limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983,
5  and 1985"). In addition, the statute of limitations for civil conspiracies does not begin to run until
6  the conspirators commit "the last overt act that is alleged to cause damage to the plaintiff." *Gibson v.*
7  *United States*, 781 F.2d 1334, 1340 (9th Cir. 1986).

8  Pearce claims that he learned that Sharp had destroyed his investigative file in early 1998.
9  *Id*. at ¶ 82. Pearce does not allege when he learned that Sharp or the unknown deputy attorney
10 general asked Scheffer or Morrow to testify falsely. However, Pearce contends that he received
11 Sharp's report containing Scheffer and Morrow's allegations in December 1995. *Id*. at ¶ 70. In
12 addition, according to Pearce, Scheffer and Morrow's allegations were patently false. *Id*. at ¶ 67.
13 Thus, Pearce was on notice approximately ten years ago that Sharp's report contained perjury.
14 Moreover, Pearce does not allege that Sharp or Scheffer performed any other "overt act" in
15 furtherance of the conspiracy within the relevant limitations period. Finally, Pearce's conspiracy
16 claim fails because "civil conspiracy is not its own cause of action" and Pearce fails to establish an
17 "underlying civil wrong that arguably supports [such] a claim." April 19, 2005 Order Granting
18 Scheffer's Motion to Dismiss at 6:4-6. These facts doom Pearce's ninth, twelfth, thirteenth, and
19 seventeenth, and twentieth claims.

20     **F.     Fifteenth Claim Against Brickman for Fabricating Evidence and Sixteenth Claim Against Brickman and Sharp for Conspiracy**

22 Pearce alleges that Brickman "fabricat[ed] evidence at the request of Sharp," including a
23 claim that Pearce molested her during an examination. FAC ¶¶ 68, 193. According to Pearce, this
24 conduct violated sections 1983 and 1985. Again, however, Pearce claims that he received Sharp's
25 report, which contained Brickman's allegedly false statement, in 1995. *Id*. at ¶ 70. The statute of
26 limitations thus bars these claims. Moreover, Brickman is immune for testifying falsely at trial and
27 conspiring to do so. April 19, 2005 Order Granting Scheffer's Motion to Dismiss at 5:1-9. Finally,
28 as discussed above, without a predicate violation, Pearce's conspiracy claim fails.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS—C-02-04011 RMW
DOH
6

### G. Eighteenth Claim Against Romeo and Sharp for Defamation

Pearce contends that Romeo and Sharp "agreed to plant" articles in the *San Francisco Examiner* and *San Jose Mercury News* that defamed him. *Id*. at ¶ 208. In addition, Pearce argues that the articles "denied Dr. Pearce equal protection under the laws enjoyed by all others of not being subjected to defamation in order to conjure up baseless charges." *Id*. at ¶ 210. According to Pearce, the articles appeared on June 15, 1995 and July 5, 1995, respectively. *Id*. at ¶¶ 57, 61. The statute of limitations for defamation is one year. *See* Cal. Code Civ. Proc. § 340(c).[10] Even assuming Pearce enjoys a constitutional right to be free from defamation, any such claim—in addition to his defamation claim—is time-barred.

### H. Twenty-Second Claim Against the Chiropractic Board Members for Prosecuting Pearce and Nineteenth Claim Against Romeo, Bourke, Primes, and the Chiropractic Board Members for Conspiracy

Pearce claims that the Chiropractic Board members violated his due process rights under section 1983 by prosecuting him "for making a correct diagnosis and performing an examination in accordance with law and the standard of care." *Id*. at ¶ 227. In addition, according to Pearce, Romeo, Bourke, Primes, and the Chiropractic Board members violated section 1985 by prosecuting him "in the course of a campaign to intimidate male chiropractors from performing rectal examinations." *Id*. at ¶¶ 42, 215. However, the Chiropractic Board members are absolutely immune for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial," such as deciding to prosecute Pearce. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). In addition, because Pearce fails to articulate how the alleged conspiracy between Romeo, Bourke, Primes, and the Chiropractic Board actually violated his rights, his conspiracy claim cannot succeed.

### I. Twenty-Third Claim Against Romeo, Meadows, Mercer, and Hersh and Twenty-Fourth Claim Against Berman for Fabricating Evidence and Twenty-Fifth Claim Against Hersh, Berman, Mercer, and Meadows for Conspiracy

Pearce asserts that Romeo became worried that her wrongdoing in the proceedings before the Chiropractic Board would come to light if she "did not succeed in some sort of prosecution of

---

[10] "[A] cause of action for defamation accrues . . . when the defendant communicates the defamatory statement to a person other than the person being defamed." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1247 (2003). Here, the limitations clock started ticking in 1995.

Pearce," so she "concocted a scheme to prosecute Dr. Pearce's Acupuncture [l]icense." *Id.* at ¶ 237.[11] Meadows and Mercer allegedly solicited Berman to fabricate evidence in support of this plot. *Id.* Pearce contends that Berman agreed to conduct psychological testing on Pearce to reach the preordained conclusion that Pearce "has a paranoid and narcissistic personality." *Id.* at ¶ 103. According to Pearce, Berman produced this report at the remand hearing on May 21, 2001. *Id.* at ¶ 104. Pearce argues that this conduct violated his constitutional rights under section 1983[12] and constitutes a conspiracy. *Id.* at ¶¶ 238-250.

However, Berman is immune for testifying falsely at trial and conspiring to do so. April 19, 2005 Order Granting Scheffer's Motion to Dismiss at 5:1-9. In addition, because Pearce has no viable cause of action for violation of his constitutional rights, his conspiracy claim fails. Finally, Pearce's claims against Meadows and Mercer—that they "concocted a scheme to prosecute [his] Acupuncture [l]icense," FAC ¶ 237—essentially re-allege his conspiracy claim. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). These nebulous allegations thus do not state a claim.

### J. Twenty-Sixth Claim Against Berman for Malicious Prosecution

Pearce next claims that Berman "had been informed that his conclusions could not be supported . . . [and] his own testing did not support his conclusions . . . [and] was without probable cause." *Id.* at ¶ 252. Nevertheless, Pearce alleges, Berman "persisted in participating in [the] prosecut[ion]." *Id.* However, as explained above, Berman cannot be liable for participating in the proceedings to revoke Pearce's Acupuncture license because (1) he is immune and (2) the court has previously determined that the "Acupuncture Board[ ] ha[d] probable cause to instigate proceedings against Pearce." April 19, 2005 Order Granting Alexander's Motion to Dismiss at 7:16-17.

---

[11] How, exactly, Pearce believes that Romeo could conceal her alleged previous wrongdoing by stripping Pearce of his Acupuncture license is unclear.

[12] Pearce does not specify which constitutional provision applies.

**L.  Twenty-Seventh Claim Against All Defendants for Conspiracy and Twenty-Eighth Claim Against All Defendants for Prosecuting Pearce**

Pearce alleges that all "defendants overwhelmed the protections of due process and fair court procedure by fraudulently concealing their conspiracy and acts in furtherance of the same." *Id*. at ¶ 257.  The root of this conspiracy, Pearce claims, was defendants' "gender bias that men can be found guilty of sexual misconduct against women on a woman's word alone." *Id*. at ¶ 262.  Thus, Pearce contends, defendants "engaged in a series of agreements which overlapped in membership, purpose, and in activities and which were united in one common goal of destroying [his] personal life." *Id*. at ¶ 266.  These causes of action allege no new facts and merely reiterate Pearce's other claims.  Because these claims add nothing, the court dismisses them.

**M.  Thirtieth Claim Against Sharp, Romeo, Sullivan, and the Chiropractic Board Members for RICO Violations**

Pearce sserts that the state defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*.  FAC ¶¶ 277-281.  For reasons stated in this court's previous orders, the statute of limitations bars this claim.  April 20, 2005 Order Granting Fulton and Guy's Motion to Dismiss at 6:1-13.  Pearce also cannot allege sufficient facts to constitute a RICO violation.  April 20, 2005 Order Granting Alexander's Motion to Dismiss at 10:5-11:14.

**N.  Leave to Amend**

Courts should grant leave to amend freely when justice requires. *See* Fed. R. Civ. P. 15(a).  Here, however, Pearce has enjoyed two chances to plead a claim against the state defendants.  The court is satisfied that leave would be futile.

### III.  ORDER

For the foregoing reasons, the court grants the state defendants' motion to dismiss with prejudice.

DATED:  1/3/07

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

M. Van Smith          mvsmith@sbcglobal.net

**Counsel for Defendants:**

| | |
|---|---|
| Tom Blake | tom.blake@doj.ca.gov |
| G. Dana Scruggs | dana@surfcitylaw.com |
| William Sidney Caspari | William.Caspari@zurichna.com |
| Harlan B. Watkins | hwatkins@mpbf.com |
| James A. Murphy | jmurphy@mpbf.com |
| Edward F. Cullen | ecullen@wpclaw.com |
| William Faulkner | wfaulkner@mfmlaw.com |
| Michael Reedy | mreedy@mfmlaw.com |
| Rebecca Hughes | rhughes@mfmlaw.com |
| Bruce C. Funk | bcfunkesq@aol.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's *CM/ECF* program.

**Dated:**     1/3/07                                               SPT
                                                          **Chambers of Judge Whyte**